13-1261

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

RALPH R. VAN DEVENTER, JR.,

*Plaintiff/Appellant,*

v.

JOHNSON & JOHNSON PENSION COMMITTEE OF JOHNSON & JOHNSON,

*Defendant/Appellee.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

## BRIEF OF DEFENDANT/APPELLEE, JOHNSON & JOHNSON PENSION COMMITTEE OF JOHNSON & JOHNSON

McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP

*Attorneys for Defendant/Appellee,*
*Pension Committee of Johnson & Johnson*
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102-4079
(973) 622-7711

Francis X. Dee,
*Of Counsel and on the*
*brief,*

Randi F. Knepper and
Janet Nagotko,
*on the Brief.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

CORPORATE DISCLOSURE STATEMENT ...................................... 1

STATEMENT OF SUBJECT MATTER & APPELLATE JURISDICTION ......... 1

STATEMENT OF ISSUES................................................................. 1

STATEMENT OF THE CASE............................................................ 2

    1.    Parties and claim.................................................................. 2

    2.    Order remanding the matter to the claims administrator...................... 4

    3.    Van Deventer's motion for reconsideration ........................................ 4

    4.    Summary judgment granted in favor of the Pension Committee......... 5

    5.    The Appeal ....................................................................... 6

STATEMENT OF FACTS ................................................................. 7

    A.    APPLICABLE TERMS OF THE LTD PLAN ..................................... 7

    B.    VAN DEVENTER'S CLAIM FOR DISABILITY BENEFITS........ 10

    C.    VAN DEVENTER'S CLAIM UNDER THE "ANY JOB" DEFINITION............................................................................. 16

    D.    VAN DEVENTER'S FIRST APPEAL............................................. 19

    E.    VAN DEVENTER'S SECOND APPEAL ........................................ 20

    F.    MOTION FOR SUMMARY JUDGMENT AND THE MATTER ON REMAND ................................................................. 23

    G.    SUMMARY JUDGMENT IN FAVOR OF THE PENSION

COMMITTEE ................................................................. 27

STATEMENT OF RELATED CASES AND PROCEEDINGS............................ 29

STANDARD OF REVIEW ..................................................... 29

SUMMARY OF ARGUMENT .................................................... 30

LEGAL ARGUMENT ......................................................... 32

   POINT I ............................................................ 32

      THE DISTRICT COURT PROPERLY GRANTED
      SUMMARY JUDGMENT IN FAVOR OF THE
      PENSION COMMITTEE AND AGAINST VAN DEVENTER
      AS VAN DEVENTER FAILED TO DEMONSTRATE
      THAT THE FINAL CLAIM DETERMINATION
      WAS ARBITRARY OR CAPRICIOUS............................. 32

      A.   The Summary Judgment Standard ........................... 33

      B.   The Applicable ERISA Standard of Review ............... 34

      C.   The District Court's Decision Should be Upheld as the Claim
         Determination was Both Reasonable and Fully Supported by
         Substantial Evidence ................................... 35

   POINT II ........................................................... 45

      VAN DEVENTER FAILED TO MEET HIS
      BURDEN OF DEMONSTRATING THAT HE WAS
      DISABLED FROM "ANY JOB" UNDER THE LTD
      PLAN ................................................... 45

   POINT III........................................................... 52

      THE DISTRICT COURT PROPERLY EXERCISED
      ITS DISCRETION IN REMANDING THE CASE TO
      PENSION THE PENSION COMMITTEE........................... 52

CONCLUSION ............................................................................... 60

CERTIFICATION OF BAR MEMBERSHIP ............................................... 61

CERTIFICATION OF WORD COUNT ...................................................... 61

CERTIFICATION OF FILING AND SERVICE ......................................... 62

CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS ............ 63

CERTIFICATION OF VIRUS CHECK ...................................................... 63

# TABLE OF AUTHORITIES

**Cases Cited**                                                                    **Page(s)**

Abnathya v. Hoffman-La Roche, Inc.,
  2 F.3d 40 (3d Cir. 1993) ........................................................ 34, 36, 37, 45

Barnable v. First Fortis Life Ins. Co.,
  44 F. Supp. 2d 196 (E.D.N.Y. March 26, 1999) ...................................... 49

Black & Decker Disability Plan v. Nord,
  538 U.S. 822 (2003)................................................................. 47

Brown v. Grabowski,
  922 F.2d 1097 (3d Cir. 1990),
  cert. denied, 501 U.S. 1218 (1991)................................................. 33

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)................................................................ 33

Corson v. Astrue,
  601 F. Supp. 2d 515 (W.D.N.Y. March 4, 2009) ...................................... 49

Creer v. AT&T Umbrella Benefit Plan No. 1,
  2012 WL 397717 (E.D. Cal. Feb. 7, 2012) ........................................... 53

Dunn v. Reed Group, Inc.,
  2009 U.S. Dist. LEXIS 78857 (D.N.J. Sept. 2, 2009)................................. 35

Firestone Tire & Rubber Co. v. Bruch,
  489 U.S. 101 (1989)................................................................ 34

Florham Park Chevron, Inc., v. Chevron U.S.A., Inc.,
  680 F. Supp. 159 (D.N.J. 1988)..................................................... 59

Green v. Fund Asset Management, L.P.,
  245 F.3d 214 (3d Cir. 2001) ....................................................... 29

Hacker v. Xerox Corp. Long-Term Disability Income Plan,
    315 F.3d 771 (7th Cir. 2003) ................................................ 53

Haisley v. Sedgwick Claims Mgmt. Services,
    776 F. Supp. 2d 333 (W.D. Pa. 2011) .................................... 54

Howley v. Miller,
    531 F. Supp. 2d 645 (D.N.J. 2008) ........................................ 28

Kosiba v. Merck & Co.,
    384 F.3d 58 (3d Cir. 2004) ............................................. 35, 37

Local 56, United Food and Commercial Workers Union v.
Campbell Soup Co.,
    898 F. Supp. 1118 (D.N.J. 1995) ........................................... 45

Lucash v. Strick Corp.,
    602 F. Supp. 430 (E.D. Pa.1984),
    aff'd, 760 F.2d 259 (3d Cir. 1985) ......................................... 29

McLain v. Metropolitan Life Ins. Co.,
    820 F. Supp. 169 (D.N.J. 1993) ............................................ 29

McLeod v. Hartford Life and Accident Ins. Co.,
    372 F.3d 618 (3d Cir. 2004) ................................................. 29

Metropolitan Life Ins. Co. v. Glenn
    554 U.S. 105 (2008) ..................................................... 55, 56

Miller v. American Airlines,
    632 F.3d 837 (3d Cir. 2011) .......................................... *passim*

Mitchell v. Eastman Kodak Co.,
    113 F.3d 433 (3d Cir. 1997) ........................................ 34, 37, 45

Moats v. United Mine Workers,
    981 F.2d 685 (3d Cir. 1992) .......................................... 29, 36

Moskalski v. Bayer Corp.,
    2008 WL 2096892 (W.D. Pa. May 16, 2008) .......................................... 36

Pannebecker v. Liberty Assur. Co. of Boston,
    542 F.3d 1213 (9th Cir. 2008) ................................................................. 53

Pinto v. Reliance Standard Life Insurance Company,
    214 F.3d 377 (3d Cir. 2000) ................................................................... 46

Port Norris Exp. Co., Inc. v. I.C.C.,
    697 F.2d 497 (3d Cir. 1982) ................................................................... 36

Sahulka v. Lucent Technologies, Inc.,
    206 F.3d 763 (8th Cir. 2000) ................................................................. 46

Stratton v. EI DuPont de Nemours & Co.,
    363 F.3d 250 (3d Cir. 2004) .............................................................. 42, 49

United States v. Compaction Sys. Corp.,
    88 F. Supp. 2d 339 (D.N.J. 1999) .......................................................... 59

Zurawel v. Long Term Disability Income Plan
for Choice Employees of Johnson & Johnson,
    2010 WL 3862543 (D.N.J. Sept. 27, 2010) ............................... 35, 36, 46

## STATUTES, RULES AND OTHER AUTHORITIES

28 U.S.C. § 1291 ................................................................................ 1

29 U.S.C. § 1001, et seq .................................................................... 1

Fed. R. Civ. P. 56(a) ........................................................................ 33

Fed. R. App. P. 26.1 ........................................................................... 1

3d Cir. L.A.R. 26.1 (2008) ................................................................. 1

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit L.A.R. 26.1, Johnson & Johnson Pension Committee of Johnson & Johnson ("Pension Committee") provide the following disclosure: the Johnson & Johnson Pension Committee, states that it is not a publicly held corporation and, as such, no entity could own 10% or more of its stock.

## STATEMENT OF SUBJECT MATTER & APPELLATE JURISDICTION

Defendant/Appellee, Pension Committee, agrees that the United States District Court, District of New Jersey (the "District Court") had original jurisdiction over this matter as it is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq. The Pension Committee further agrees that this Court maintains appellate jurisdiction pursuant to 28 U.S.C. § 1291 because Plaintiff/Appellant, Ralph R. Van Deventer, Jr., ("Van Deventer"), is appealing a final decision of the District Court.

## STATEMENT OF ISSUES

1.    Whether the District Court properly held that Van Deventer failed to meet his burden of demonstrating that the Pension Committee's determination that Van Deventer was not disabled from "any job" as defined by the Long Term

Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Companies (the "LTD Plan") was arbitrary and capricious?

2.    Whether the District Court properly held that Van Deventer failed to meet his burden of proving that he was disabled from any job for which he is (or may reasonably become) with or without reasonable accommodation qualified by training, education or experience?

3.    Whether the District Court properly exercised its discretion in remanding the matter to the Pension Committee to obtain clarification concerning the opinion of Lawrence I. Barr, M.D. ("Dr. Barr")?

## STATEMENT OF THE CASE

### 1.    Parties and claim

Van Deventer commenced this action seeking LTD benefits and all attendant benefits that he would have received if he was disabled under "any job" as defined by the LTD Plan. The LTD Plan was established and maintained by Johnson & Johnson ("J&J") to provide LTD benefits to participating employees of J&J and its affiliated companies, and is an employee welfare benefit plan as defined by ERISA. The LTD Plan is funded solely through premiums paid by its participants. The Pension Committee is conferred discretionary authority to construe the terms of the LTD Plan, and to delegate its authority to render claim determinations.

2

Accordingly, the highly deferential arbitrary and capricious standard of review applies to the Court's review of this matter.

Van Deventer submitted a claim asserting he was disabled, as of September 8, 2008, from his occupation of Senior Compliance Analyst, for the Ortho-Clinical Diagnostics Division of J&J. He asserted his disability was the result of back pain and tendonitis of the left Achilles tendon. Van Deventer received short term disability ("STD") benefits from September 9, 2008 through March 8, 2009, and LTD benefits from March 9, 2009 through March 8, 2010, pursuant to the "own occupation" definition of total disability of the LTD Plan. Van Deventer's benefits were discontinued on March 9, 2010, because he was not disabled from "any job," which is the LTD Plan definition applicable after one year of disability.

The final claim determination was based upon the complete administrative record, including four independent medical examinations, a functional capacity evaluation ("FCE"), and two independent physician reviews. Contrary to Van Deventer's assertion, the claim determination was not based solely on the opinion of Dr. Barr, an independent medical consultant who had examined Van Deventer twice and determined that he was capable of performing sedentary work. Rather, the final claim decision was based upon an analysis of the complete administrative record including the opinions of all of the medical professionals who either

3

examined Van Deventer or reviewed his medical records and determined that he was capable of sedentary work. (Brief of Appellant, p. 3 ("Appellant's Brief")). In fact, the only physician who concluded that Van Deventer was disabled, was his treating physician Irving R. Strouse, M.D. ("Dr. Strouse"), whose opinion was unsupported. (A18-19). Van Deventer did not meet his burden of demonstrating that he was totally disabled from "any job" for which he was or may reasonably become with or without reasonable accommodation qualified by training education or experience. Accordingly, his claim for LTD benefits during the "any job" period was appropriately denied.

## 2.    Order remanding the matter to the claims administrator

By Memorandum and Order dated February 1, 2012 (the "Remand Order"), the Honorable Peter G. Sheridan, U.S.D.J. ("Judge Sheridan") remanded this matter to the claim administrator to clarify certain inconsistencies in Dr. Barr's reports and to reconsider the claim determination. (A692-702).

## 3.    Van Deventer's motion for reconsideration

By motion dated February 3, 2012, Van Deventer filed a motion seeking that the District Court reconsider the Remand Order. The Pension Committee opposed the motion. By order dated May 3, 2012, Judge Sheridan denied Van Deventer's motion for reconsideration and directed that Dr. Barr issue a new report within 30

days of the date of the order and that the Pension Committee render a decision within 30 days of receipt of Dr. Barr's report. (A13).

## 4.    <u>Summary judgment granted in favor of the Pension Committee</u>

Based upon the complete administrative record, including the clarifications obtained from Dr. Barr, and in compliance with the Remand Order, the claim determination was upheld. As set forth in the determination letter dated July 11, 2011, the final determination on remand was based on the complete administrative record, including but not limited to, Dr. Barr's opinions ("Remand Determination").

The parties filed cross-motions for summary judgment. Van Deventer, by way of his motion, sought to shift the burden from him, where it clearly rested, to the Pension Committee to establish that he was not disabled. Contrary to Van Deventer's assertions, the LTD Plan does not require that the Pension Committee objectively disprove disability. Rather, it was Van Deventer's obligation to demonstrate that he met the LTD Plan's definition of disability during the "any job" period, and he failed to do so. Van Deventer was afforded a full and fair review of his claim, including multiple opportunities to submit additional documentation, and he did not. Van Deventer did not meet his burden of demonstrating that the final claim determination was arbitrary and capricious or

that he was entitled to LTD benefits during the "any job" period. Consequently, the District Court granted summary judgment to the Pension Committee, and denied Van Deventer's cross-motion for summary judgment. (A18).

## 5.    The Appeal

Van Deventer filed his Notice of Appeal on January 24, 2013. Van Deventer's appeal is based upon issues that have no bearing on whether or not he met his burden of demonstrating that the claim determination was arbitrary and capricious. Contrary to Van Deventer's assertion, the final claim determination was based upon the complete administrative record, which supported the conclusion that Van Deventer was capable of sedentary work, including his own job. Van Deventer's appeal lacks merit because he failed to provide the Pension Committee with medical documentation supporting his claim that he was disabled from "any job" as defined by the LTD Plan. The medical test results he submitted were limited to two MRI reports, both of which classify his condition as "mild." Van Deventer cannot meet his burdens of demonstrating that the claim determination was arbitrary and capricious or that he provided proof that he was disabled from "any job" as defined by the LTD Plan. Accordingly, it is respectfully submitted that the Court should affirm the District Court's well supported decision

6

granting summary judgment to the Pension Committee and denying summary judgment to Van Deventer.

## STATEMENT OF FACTS

The final claim determination was based upon the complete administrative record, including the conclusions of multiple independent physicians, who either examined Van Deventer or reviewed his medical records, and the conclusion of a physical therapist who performed 2 functional capacity evaluations. All of the medical professionals concurred that Van Deventer was capable of sedentary work at the time his claim was denied, March 9, 2010. In compliance with the Remand Order, the Pension Committee sought and obtained clarification from Dr. Barr concerning his opinions, and Dr. Barr reiterated his conclusion that Van Deventer was capable of sedentary work with certain postural limitations. Accordingly, the claim determination is fully supported by the administrative record, which clearly demonstrates that Van Deventer was capable of performing the duties of "any job for which he was or may reasonably become with or without reasonable accommodation qualified by training education or experience," and therefore, he did not meet the LTD Plan's definition of disability at the time his benefits ended.

## A.     APPLICABLE TERMS OF THE LTD PLAN

A participant is eligible to receive monthly LTD benefits if he submits proof

that he is unable to perform the essential functions of his regular occupation (with or without reasonable accommodations) for 12 months. Thereafter, a participant is only eligible to receive LTD benefits if he provides proof that he is unable to do any job for which he is, or may reasonably become, qualified by training, education or experience. (A755). Specifically, the LTD Plan provides:

## TOTAL DISABILITY

"**Total Disability**" or "**Totally Disabled**" means:

\*\*\*

    (b) during the portion of any period of disability not exceeding 12 months following the duration of the Elimination Period, the complete inability of the Participant, due to Sickness or Injury, to perform the Essential Functions of his or her Regular Occupation, with or without reasonable accommodation; AND

    (c) during the remainder, if any, of the period of disability, the complete inability of the Participant, due to Sickness or Injury, to perform **any job** for which the Participant is (or may reasonably become) with or without reasonable accommodation qualified by training, education or experience. (A847).

The LTD Plan further provides that it is a participant's burden to provide proof establishing continuing eligibility for LTD benefits and that he may be required to undergo evaluations to determine his continuing eligibility for benefits. (A854). In particular, the LTD Plan states:

8

## EVALUATION OF PARTICIPANT'S MEDICAL STATUS

The Plan Administrator and its authorized representatives, including without limitation the Claims Service Organization[1], shall have the right to conduct evaluations of a Participant's medical status and eligibility for benefits under the Plan at any time while an application for benefits is pending, a Participant is receiving benefits or a claim or claim appeal is pending. It is the Participant's responsibility to provide the Claims Service Organization with all information necessary to evaluate his or her medical condition and functional capacity, including but not limited to information supplied by the treating Provider.

At the discretion of the Plan Administrator or its authorized representative, the evaluation may include medical examination(s) by a Plan Provider, at no cost to the Participant. The Plan Provider may also, from time to time, evaluate the Approved Treatment Plan prescribed by the Approved Treatment Provider, to determine whether it conforms to generally accepted medical practice for the Participant's Sickness or Injury and whether the Approved Treatment Plan is being adhered to by the Participant. Id.

The Plan administrator, the Pension Committee, is conferred discretionary authority to determine eligibility for benefits and the power to delegate its authority. (A863-865). The Pension Committee delegated the authority to

---

[1] "Claims Service Organization" is defined by the Plan to mean "a corporation, or other entity, retained by the Plan Administrator on behalf of the Plan to provide specified administrative services to the Plan." (A843).

9

investigate claims and render initial and first level appeal determinations to the Reed Group, ("Reed") and second level appeal determinations to Richard McDonald, Director of Corporate Benefits ("Mr. McDonald"). The LTD Plan is funded solely by contributions from its participants. (A866).

**B.    VAN DEVENTER'S CLAIM FOR DISABILIY BENEFITS**

On September 9, 2008, Van Deventer submitted a claim, by telephone, seeking short term disability ("STD") benefits, stating that he was disabled from his occupation of Senior Compliance Analyst as of September 8, 2008, due to back pain and tendonitis of the left Achilles tendon. (A97). It is undisputed that Van Deventer's pre-disability occupation was "sedentary" in nature, and Van Deventer described his position as a "desk work position." (*See* Appellant's Brief, p. 5). Van Deventer's primary treating physician, Dr. Strouse, in his initial Attending Physician Statement ("APS") dated September 29, 2008, stated that Van Deventer's primary diagnosis was "Tenosynovitis (L) ankle," and his secondary diagnosis was "lumbar sprain" (A641).

Thereafter, Van Deventer submitted a claim seeking LTD benefits, stating that he could no longer work due to his "back pain" and his "Achilles pain." (A536-A538). Dr. Stouse again, by APS dated February 5, 2009, stated a primary diagnosis of "tendonitis of Achilles tendon," and recommended "physical therapy

10

and a cam walker" as a treatment plan. (A534). In the APS, Dr. Srouse described

Van Deventer's condition as: "Class 3– Moderate limitation (functional capacity,

capable of clerical administrative (sedentary) activity." (A535). Dr. Strouse

marked the box "No," in response to the question inquiring whether Van Deventer

was totally disabled. Id. Further, in response to the question "do you expect a

fundamental or marked change in the future," Dr. Strouse responded "Yes." Id.

Dr. Strouse concluded by stating that Van Deventer was capable of "sedentary

work 4 hrs/day." Id.

The Reed Group, Ltd. ("Reed"), the Claims Service Organization, initially

approved Van Deventer's claim for benefits until his treating physician, Dr.

Strouse, concluded that he could return to work part-time beginning March 2,

2009, and full-time, without restrictions after April 5, 2009. (A513-514). Reed

informed Van Deventer that he was approved for STD benefits from September 8,

2008 through March 8, 2009, and that, based upon the medical information

provided by Dr. Strouse, he was approved for modified work beginning March 2,

2009. (A511-512). Van Deventer returned to work under a modified work plan

beginning March 2, 2009. Thereafter, he returned to work full time. Van Deventer

was notified by letter dated April 8, 2009, that his LTD benefits would end as of

April 5, 2009, because the medical documentation did not support a continuation

11

of disability, and he was released to return to work full time by his attending

physician, Dr. Strouse. (A507-508).

By correspondence dated June 5, 2009, Reed received medical records from

Van Deventer, including:

- copies of an MRI report of his cervical spine dated May 26, 2009, finding "[m]ulti-level cervical spondyloisthesis, most notable in the upper cervical spine at C4-C5, which results in mild cord compression without intrinsic cord signal alteration;"

- a prescription from Dr. Strouse for continued physical therapy; and

- a letter dated June 3, 2009, from Van Deventer describing his condition and experience.

(A497). Van Deventer stated that after he transitioned from the rehabilitative work

to full-time work he began to experience pain in his neck and the right side of his

head "like a bad headache" causing him to seek an MRI. (A502). He further stated

that it was dangerous for him to drive because he could "hardly turn his neck," and

that the results of the MRI showed, "multiple disc problems (bulges, stenosis, and

spinal cord compression) in all but one disc. Id. However, the actual MRI report

classified his disc bulges and stenosis as mild in all disc areas except for C4-C5,

where the disc bulge was classified as mild-moderate. (A498).

By correspondence dated June 12, 2009, Reed received the following

12

additional medical records from Van Deventer:

- Note from Dr. Strouse dated June 11, 2009, stating:

  > Ralph Van Deventer is under my care for cervical disc degeneration and herniation in both the cervical and lumbar spine. He also underwent arthroscopic surgery of his right knee in 2005 and has been treated for Achilles tendonitis of his left heel. Please be advised because of these medical conditions, I consider him to be a candidate for long term disability. (A485).

- Four short office visit notes from Dr. Strouse dated 3/27/09, 4/28/09, 5/12/09, and 5/29/09.

- MRI report dated May 26, 2009, which was previously submitted.

- Note from Zulfjqar A. Rajput, M.D. ("Dr. Rajput"), a Board certified psychologist, stating that Van Deventer was suffering from depression and anxiety and not responding well to medications.[2]

(A484-492).

Reed received additional medical records from Van Deventer dated July 21, 2009, related to spinal injections he had undergone at the Pain Institute of New Jersey (A471-472). Van Deventer stated that he had undergone 11 injections to date. (A470). Reed also received a letter from Van Deventer dated July 21, 2009,

---

[2] There are two notes in the administrative record from Dr. Rajput, diagnosing Van Deventer with anxiety and depression; however, in neither note did Dr. Rajput opine that Van Deventer was disabled or that he had any restrictions or limitations as a result of his psychiatric condition. (A574, A492).

stating that his condition had worsened causing "relentless headaches that cause nausea/vomiting," and that he "walked out of work" on July 20, 2009. (A453-454). An Excuse Slip received from Dr. Strouse dated July 17, 2009, stated a diagnosis of "degenerative disc disease, cervical 722.4, lumbar spine." (A456). No specific restrictions were identified, nor were any other medical records provided in support of his opinion. The note stated that Van Deventer should "remain out of work as of 7/21/09 till future notice." Id.

A functional capacity evaluation was sought by Reed and conducted by Charles Filippone, PT ("Mr. Filippone") on July 23, 2009. Mr. Filippone concluded that the results were unreliable and not an accurate portrayal of Van Deventer's maximum physical capacity because of his self-limited performance during the evaluation. Mr. Filippone stated that Van Deventer had "demonstrated an inconsistent effort through all of the six components of the evaluation" (A431-A451).

An independent medical examination was performed by Dr. Barr, an orthopedic surgeon retained by Reed to evaluate Van Deventer. Dr. Barr's July 29, 2009, impression of Van Deventer included degenerative disc disease, cervical spine with cervical facet syndrome; degenerative disc disease, lumbar spine, with lumbar facet syndrome; depression and anxiety; and Achilles tendonitis, left. Dr.

14

Barr concluded:

> In regard to the examinee's ability to work, he is capable
> of sedentary duty only.  He must be able to change his
> position every 30 minutes.  He should be able to work an
> eight-hour day, but limited to sedentary duty with no
> bending or lifting as well as frequent position changes.

(A417-422).  By letter dated August 4, 2009, Dr. Barr commented that he had

reviewed the FCE dated July 23, 2009, which stated that Van Deventer

demonstrated inconsistent effort, and that the FCE report did not change his

findings.  In particular, Dr. Barr stated: "[m]y opinion stands at this point, based on

his [Van Deventer's] complaints and self-limiting behavior, that he [Van Deventer]

is not capable of his full duty position." (A423).

Van Deventer's LTD benefits were approved by correspondence dated

September 4, 2009. (A404-406).  Reed reminded Van Deventer that his receipt of

disability benefits was contingent upon his cooperation and continued submission

of medical evidence in support of disability:

> Your LTD payments will continue until you recover to
> the point where you no longer meet the definition of
> disability under the LTD Plan as determined by … Reed.
>
> We take this opportunity to emphasize the importance of
> your ongoing adherence to the above provisions as we
> noted on your 7/23/09 Functional Evaluation Exam
> (FCE) with Charles T. Fillipone, PT, OCS, CAE who
> concluded that due to your significantly self-limited
> performance and accurate assessment of your physical

strength abilities could not be determined.  Please understand that any future non compliance with any and all provisions of the Plan will result in your claim being denied immediately per the Johnson & Johnson LTD Plan, as stated above....

...to remain eligible for Plan benefits you must be under the regular care of a licensed health care provider, adhere to an approved treatment plan and provide continued medical evidence of your disability.  You must also cooperate in the medical evaluation process, including, as an example, submitting to a medical exam and providing documentation, as requested by the Reed Group.

Id.

## C.    VAN DEVENTER'S CLAIM UNDER THE "ANY JOB" DEFINITION

By correspondence dated November 9, 2009, Reed informed Van Deventer that the initial period of his receipt of LTD benefits under the "own occupation" definition of disability was ending on March 9, 2010, and to continue to receive LTD benefits, he would need to demonstrate that he was totally disabled from "any job" for which he is or may become qualified by training, education and experience. (A377-378). By correspondence dated December 17, 2009, Reed requested that Mr. Filippone perform a second FCE (A299) and that Dr. Barr perform a second independent medical examination (A298).

Reed received medical records from Van Deventer by correspondence dated November 7, 2009.  (A305-339).  The records included:

- physician contact sheet;

16

- authorization executed by Van Deventer for the release of medical records dated November 23, 2009;

- attending physician statement from Dr. Strouse dated December 3, 2009, stating under the caption "Prognosis" that Dr. Strouse did not expect a fundamental or marked change in the future in Van Deventer's condition. There was no explanation provided as to why Dr. Strouse changed his earlier opinion where he had answered "Yes" under "Prognosis" to the same question;

- chiropractic and physical therapy office visit notes dated October 21, 2009 through December 1, 2009;

- progress note from Samuel D. Dr. Schenker, M.D. ("Dr. Schenker"), dated November 20, 2009, stating: "[t]he patient has done extremely well post injection. He has good range-of-motion with minimal discomfort;"

- post operative note from Dr. Schenker dated November 25, 2009, following an epidural injection stating: "[t]he patient demonstrated a good response to said injection without any untoward effects. The patient demonstrates good cognitive status and is discharged from this office on his own cognizance;" and

- a re-evaluation report from Heartland Rehabilitation Services from Ms. Vallone stating:

> Patient reports that he has been unable to work since 7/21/09 secondary to increased pain through lumbar and cervical spine. Patient reports increased pain through the cervical and lumbar spine with sleeping, driving, sitting, etc.
>
>                ***
>
> **Assessment:**

17

> The patient's rehabilitation potential is excellent.
> Patient presented with decreased pain following
> completion of today's treatment session.

(A305-339).

On January 7, 2010, Van Deventer underwent a second FCE with Mr.

Filippone. As a result, Mr. Filippone determined that Van Deventer demonstrated a

consistent effort in most aspects of the testing and that he was capable of

performing the demands of <u>any</u> sedentary occupation.  Specifically, Mr. Filippone

stated:

> Based on Van Deventer's performance, he meets the
> essential postural and physical demands of any sedentary
> occupation without restriction for an eight hour work
> day.

(A278-297).

On January 27, 2010, Dr. Barr performed a second independent medical

examination; reviewed all of Van Deventer's medical records; and concluded:

> It is my opinion that the examinee [Van Deventer] is
> capable of sedentary duty work only.  He can work an
> eight-hour day, but he must be able to change his position
> frequently.  If his job will allow this, then he is capable
> of working.

(A273-277). Dr. Barr also commented that after reviewing the FCE, "it was

obvious that this was an invalid study." (A276). As admitted by Van Deventer, Dr.

Barr concluded as a result of both the July 2009 and January 2010 independent

examinations that Van Deventer was capable of performing the duties of a sedentary job. (Appellant's Brief p. 9).

By letter dated February 18, 2010, Van Deventer was notified that he did not qualify for additional LTD benefits because the medical documentation in the administrative record did not support a finding that he was totally disabled from "any job" as defined by the LTD Plan. (A270-272). Reed informed Van Deventer that his LTD benefits would end effective March 9, 2010, and provided him with instructions as to how to appeal the determination and a description of the clinical documentation required to support an appeal. Id.

## D.   VAN DEVENTER'S FIRST APPEAL

By correspondence dated June 28, 2010, Van Deventer appealed the denial of his claim for LTD benefits (A150-00154). The only additional medical information or results submitted in support of his appeal was an FCE report of Ellen Rader Smith ("Ms. Smith") which stated, in part, that Van Deventer unsuccessfully attempted to return to work in 2009. (A236-249). Ms. Smith's findings were largely based upon Van Deventer's self reported complaints and her one meeting with Van Deventer. Id.

Reed forwarded the entire file for a medical review by Renat Sukhov, M.D. ("Dr. Sukhov"), Board certified in physical medicine and rehabilitation, who

19

concluded that Van Deventer "was capable of sedentary duty work, as long as he could change positions every 30-45 minutes with no lifting." (A218-221). The denial of Van Deventer's claim was upheld by correspondence dated August 10, 2010. (A207-210).

## E.     VAN DEVENTER'S SECOND APPEAL

By correspondence dated August 24, 2010, Van Deventer, through counsel, submitted a second level appeal. Van Deventer submitted no additional medical documentation, notwithstanding the fact that this was another opportunity to submit medical records and opinions to support his alleged restrictions and limitations. (A194-195).

An additional independent medical review was requested and completed by Kevin Trangle, M.D. ("Dr. Trangle"), a Board certified medical examiner. Dr. Trangle concluded that "[i]n short,… this individual has been capable of sedentary duty [work] for some time well before the 3/10/10 date when his benefits were terminated." (A674-683). Van Deventer had only two diagnostic tests performed: an MRI scan of his neck dated 5/22/09 which showed cervical spondylosis in the upper spinal region with minimal cord compression and an MRI of the lumbar spine on 11/13/08 which showed some degenerative desiccation changes. Dr. Trangle stated: "[t]he patient never had an EMG/NCV study, CAT scan,

20

myelogram or other diagnostic studies beyond these two. [emphasis added]

(A680).  Dr. Trangle concluded:

> It is **my medical opinion based upon a reasonable degree of medical certainty that Mr. Van Deventer is capable of sedentary work.**  He had two Functional Capacity Evaluations.  The first one was invalid due to poor effort, the second one showed he could work in a sedentary capacity, and the third one said he could not, but was not validated by any objective measurements or testing for consistency or maximum effort.  The proffered rational for why he could not work was not convincing.
>
> Repetitive examinations by his **own treating physicians and outside examiners never found him to have any objective evidence....** He does have some mild decreased range of motion and he does have some intermittent swelling of his left heel, which does limit him in terms of his ability to walk.  However, he is able to perform in a sedentary occupation without any problem based upon all of his evaluations.  His objective tests including the MRI scans of the cervical and lumbar spines do not show him to have any significant lesion that would preclude him from doing sedentary activity.  He has **mild degenerative changes** including some facet hypertrophy, disc herniation in one area, but there is no compressive lesion, nerve root edema, nerve root compression, nerve root impingement, foramina stenosis or central canal stenosis.  **These mild degenerative changes would not preclude him from working in a sedentary position.**
>
> ***
>
> **Tenosynovitis of the foot and ankle does limit him in his ability to have prolonged standing and walking** and that is taken into account, but it **does not limit him in his ability to do sedentary work.**

21

&ast;&ast;&ast;

> Although cervical and vertebral disc without myelopathy, neuritis and radiculitis is listed, there is absolutely **no evidence he has any of these condition.** [sic]. He has not EMG/NCV study or other objective evidence of electrophysiological abnormalities. His reflex, sensation and motor findings are normal. **In short, there is absolutely no evidence that he has neuritis of any sort**. [emphasis added].

(A674-683).

The claim determination was upheld as the medical information contained in the administrative record overwhelming demonstrated that Van Deventer did not have restrictions or limitations that prevented him from performing the duties of a sedentary job. Van Deventer was notified of the final claim determination by correspondence dated November 22, 2010 ("Determination Letter"). (A685-691). The Determination Letter provided Van Deventer with the relevant definitions of "total disability" as well as the criteria that a plan participant must meet to qualify for benefits (Id.). The Determination Letter concluded that Van Deventer failed to provide clinical or medical test results supporting his claim that he was disabled from "any job:"

> We have evaluated all of the documentation related to Mr. Van Deventer's claim. The record includes letters, office visit notes, and other medical records from Mr. Van Deventer's treating physicians, including Dr. Strouse and Schenker; a FCE report from Mr. Filippone

in January 2010, a FCE report from Ms. Smith from June 2010, an IME report by Dr. Barr in January 2010; as well as independent file reviews by Dr. Sukhov in August 2010 and Dr. Trangle in November 2010. The **documentation contains substantial objective evidence to support Reed's initial determination** that Mr. Van Deventer was capable of work at a sedentary level, with certain restrictions and limitations, and was no longer disabled under the terms of the Plan, as of March 10, 2010. [emphasis added].

(A690-691).

## F.    MOTION FOR SUMMARY JUDGMENT AND THE MATTER ON REMAND

Van Deventer filed suit and the parties simultaneously filed cross-motions for summary judgment. By Memorandum and Order dated February 1, 2012, the District Court denied both parties cross-motions for summary judgment. The District Court remanded the matter to the claim administrator to verify the diagnosis and opinions of Dr. Barr and to re-evaluate its decision in tandem with the facts previously considered. (A692-702). The Remand Order directed the Pension Committee to clarify the conflicting reports of Dr. Barr dated July 29, 2009, wherein Dr. Barr concluded that Van Deventer "should be able to work an eight-hour day, but limited to sedentary duty with no bending or lifting," with Dr. Barr's statement in his letter dated August 4, 2009, that "[m]y opinion *stands* at this point, based upon [Plaintiff's] complaints and self-limiting behavior, that

23

[Plaintiff] is *not* capable of his full duty position." (A2-A12).   In addition, the Court directed the Pension Committee to clarify whether Dr. Barr's comments referring to an FCE as an "invalid study" were referring to the July 23, 2012, or January 10, 2012, FCE. (Id.).

Dr. Barr responded when questioned as to whether the apparent inconsistency in the August 4, 2009, correspondence was a typographical error, as follows:

> With regard to your first question, this was not a typographical error on my August of 2009 report. This was based on the medical records I had available to me at the time as well as the history and evaluation of the patient. My recommendation for job restrictions was not changed.

(A714). Thereafter, Mr. McDonald sought and obtained further clarification from Dr. Barr. By correspondence dated March 9, 2012, Dr. Barr stated:

> On the most recent Functional Capacity Evaluation from January 7, 2010, they found that he [Van Deventer] meets the essential postural and physical demands of his occupation for any sedentary occupation for an eight-hour workday. That has been my opinion since the beginning. **I felt the patient was capable of working sedentary duty, but with the recommendation of being able to change position frequently** [emphasis added].

(A709).   On April 6, 2012, Dr. Barr further clarified his conclusions during a telephone conference by stating that he wanted to be sure Van Deventer would be allowed to change positions:

24

> **He is capable of sedentary duty.** I wanted to make sure that he could change his position frequently. He could lift up to 10 lbs; certainly, I have no problem with that. He could work a full 8 hour day. No bending and lifting heavy objects, but up to 10lbs certainly [emphasis added].

(A715-716). Dr. Barr's responses confirmed his consistent position that Van Deventer was capable of full-time sedentary duties with an accommodation for postural changes. (A417-422, A273-274).

On remand, Dr. Barr also clarified that the FCE report that he referenced in his January 27, 2010, report as being "invalid" was the July 23, 2009 FCE and not the January 7, 2010 FCE. By letter dated March 9, 2012, Dr. Barr stated:

> If there is some confusion on my previous position, I agree with the Functional Capacity Evaluation. On the most recent Functional Capacity Evaluation from January 7, 2010, they found that he [Van Deventer] meets the essential postural and physical demands of his occupation for any sedentary occupation for an eight-hour workday. That has been my position since the beginning.

(A709). Moreover, Dr. Barr reiterated this in his letter dated March 23, 2012:

> The **second Functional Capacity Evaluation was a valid test** and therefore more valid than the previous Functional Capacity Evaluation. It was a more accurate representation of the patient's actual abilities [emphasis added].

25

(A714). Dr. Barr, again, during the telephone conference on April 6, 2010, stated: "[y]es he did better in terms of performance with the second functional capacity examination [January 7, 2010] and **it was valid** [emphasis added]." (A715).

After receiving clarification from Dr. Barr as directed by the District Court, all the medical documentation contained in the administrative claim file was reconsidered and the claim determination was upheld by letter dated July 11, 2012 ("Remand Determination"). (A719-737). The Remand Determination addressed the Court's concerns related to Dr. Sukhov and Dr. Trangle's reliance upon Dr. Barr's opinions. (A735). In particular, Mr. McDonald stated that "[s]ince Dr. Barr has clarified his opinion that Van Deventer is capable of sedentary work, we reasonably conclude that the reports of Drs Sukov and Trangle are consistent with his clarification." Id. Further, Mr. McDonald noted that Dr. Trangle did not rely exclusively upon Dr. Barr's opinion in rendering his opinion that Van Deventer was capable of sedentary work. Id. In fact, Dr. Trangle evaluated all the medical evidence and diagnostic testing available in the administrative record at the time he performed his review in assessing Van Deventer's medical conditions and capability to perform sedentary work. (A735-736). In conclusion, Mr. McDonald stated:

> The documentation as supplemented on Remand, contains substantial objective evidence to support Reed's

26

> initial determination that Mr. Van Deventer was capable
> of work at a sedentary level, and to support the prior J&J
> determination that Mr. Van Deventer was capable of
> sedentary work with certain restrictions and limitations,
> and that Mr. Van Deventer is no longer disabled under
> the terms of the Plan, specifically the 2nd Tier of benefits
> under the Plan, as of March 10, 2010.

(A736).

## G.    SUMMARY JUDGMENT IN FAVOR OF THE PENSION COMMITTEE

By Order entered January 16, 2013, the District Court granted the Pension Committee's cross-motion for summary judgment and denied Van Deventer's motion for summary judgment finding "no evidence of breach of any fiduciary duty owned to Van Deventer." (A19). In its opinion, the District Court acknowledged that the Pension Committee's decision was based upon substantial evidence, and by contrast, Van Deventer had not met his burden of proof. In particular, the District Court concluded:

> Looking at the record as a whole, the Court disagrees
> with Plaintiff's "cherry-picking" argument, and finds the
> Pension Committee relied on the opionions of at least
> four doctors – Lawrence Barr, Kevin Trangle, Renat
> Sukhov and Carmen M. Quinones, M.D. of the Pain
> Institue of New Jersey as well as the opinion of Mr.
> Filippone, a physical therapist. They found:
>
> Dr. Quniones treated Mr. Van Deventer's back injury
> with repeated epidural steroid injections, and noted that
> he was in 'no acute distress.'

27

Physical therapist Filippone found that a functional capacity evaluation (FCE) was unreliable, and that 'accurate assessment of [Plaintiff's] physical strength and abilities cannot be determined' because of '[Plaintiff's] significantly self-limited performance.' In a subsequent FCE, physical therapist Filippone found Van Deventer 'meets the essential postural and physical demands of any sedentary occupation without restriction for an eight hour work day.'

Dr. Sukhov, physical medicine and rehabilitation physician, found Van Deventer could perform sedentary work so long as he could frequently change positions.

Dr. Trangle, a medical examiner, also found Van Deventer could perform sedentary work.

Dr. Barr, as noted above, found Van Deventer could perform sedentary work.

The Pension Committee **did not act in an arbitrary and capricious manner** because it relied upon the opinions of the above medical experts. Those opinions are more than sufficient evidence to support the decision. *Howley v. Miller*, 531 F.Supp. 2d 645, 648 (D.N.J. 2008). Plaintiff also argues that Van Deventer's physician, Irving D. Strouse, submitted an opinion that Van Deventer was disabled. However, **that opinion was conclusory, and was not accompanied by any supporting diagnostics** other than **two MRI** reports which classified Van Deventer's condition as **mild.** [emphasis added].

(A18-19). This appeal followed.

## STATEMENT OF RELATED CASES & PROCEEDINGS

The Pension Committee is unaware of any cases or proceedings relating to this action.

## STANDARD OF REVIEW

The standard of review to be applied by this Court in reviewing the District Court's granting of summary judgment is plenary. McLeod v. Hartford Life and Accident Ins. Co., 372 F.3d 618 (3d Cir. 2004) ("Our review of the grant of summary judgment is plenary); Green v. Fund Asset Management, L.P., 245 F.3d 214 (3d Cir. 2001). The proper standard of review of the claim determination is the arbitrary and capricious standard as the Pension Committee is conferred discretionary authority to make benefit determinations and interpret the terms of the LTD Plan. McLain v. Metropolitan Life Ins. Co., 820 F.Supp. 169, 174 (D.N.J. 1993). Further, as here, where the LTD Plan's decision is supported by substantial evidence, "[t]he court is not free to substitute its own judgment for that of the defendant in determining eligibility for plan benefits." Lucash v. Strick Corp., 602 F. Supp. 430, 434 (E.D. Pa.1984), aff'd, 760 F.2d 259 (3d Cir. 1985). Accordingly, the reviewing court should exercise only limited review of the decision, as long as there exists a reasonable ground for disagreement as to the accuracy of the claim determination, the determination should be upheld. Moats v. United Mine

29

Workers, 981 F.2d 685, 687-688 (3d Cir. 1992).

## SUMMARY OF ARGUMENT

Van Deventer failed to meet his burden of demonstrating that the final claim determination was either arbitrary or capricious and that he was disabled from "any job" which he was or may reasonably become, with or without reasonable accommodation, qualified by training, education or experience. As the facts set forth above clearly demonstrate, the denial of Van Deventer's claim for LTD benefits under the "any job" standard of disability was fully supported by the administrative record and was neither arbitrary nor capricious. The District Court soundly reasoned that the medical opinions relied upon by the Pension Committee were "sufficient to support the decision." (A18). In fact, no doctors found Van Deventer to be disabled other than his one treating physician, Dr. Strouse, whose opinion, as noted by the District Court, was "conclusory," and "was not accompanied by any supporting diagnostics other than two MRI reports which classified Van Deventer's condition as "mild." (A19).

The Pension Committee's review process was thorough and complete and considered each diagnoses, restriction and/or limitation that Van Deventer claimed to have in arriving at the conclusion that Van Deventer was not disabled under the "any job" definition of total disability as set forth in the LTD Plan. On remand, the

Pension Committee went beyond what was required in the Remand Order by contacting Dr. Barr numerous times before rendering its final determination. The final determination letter addressed each of the concerns identified by the District Court as inconsistencies in Dr. Barr's report; was based upon substantial evidence; and consequently was neither arbitrary nor capricious. (A719-A737).

Van Deventer's appeal highlights the lack of documentation supporting his claim at the time his claim was denied. Van Deventer, without legal support, inappropriately attempts to shift the burden of proof from himself, where it clearly rests, to the Pension Committee because he cannot meet his burden of demonstrating that he was unable to perform the duties of "any job" as defined by the LTD Plan. Van Deventer's appeal distorts the facts contained in the administrative record by ignoring medical opinions and conclusions that are contrary to his position; misrepresenting the administrative record; and by setting forth facts and conclusions without any citation to the administrative record.

Rather than directing the Court to the substantial evidence that supports his claim, Van Deventer incorrectly asserts that his benefits should have been reinstated based upon the Third Circuit's decision in Miller v. American Airlines, 632 F.3d 837, 856-857 (3d Cir. 2011). (Appellant's Brief at p. 23). In contrast, where, as here, the District Court made no finding that the determination was

arbitrary or capricious, <u>Miller</u> does not require the reinstatement of benefits. (<u>Id.</u> at 857; A11). Moreover, the Third Circuit in <u>Miller</u> held that remand, and not reinstatement, was appropriate where, as here, the claim determination was an initial determination pertaining to whether Van Deventer was disabled from "any job" as defined by the LTD Plan.

The Pension Committee respectfully submits that the District Court's decision should be affirmed by this Honorable Court as it properly held that the claim determination was neither arbitrary nor capricious and that Van Deventer did not meet his burden of demonstrating that he was eligible to receive disability benefits under the "any job" definition of disability as defined by the LTD Plan.

## LEGAL ARGUMENT

### POINT I

**THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE PENSION COMMITTEE AND AGAINST VAN DEVENTER AS VAN DEVENTER FAILED TO DEMONSTRATE THAT THE FINAL CLAIM DETERMINATION WAS ARBITRARY OR CAPRICIOUS**

The final claim determination was fully supported by the medical documentation in the administrative claim file which clearly evidences that Van Deventer was capable of performing sedentary work at the time his claim for LTD

32

benefits was denied.  The Pension Committee delegate concluded, based upon the complete administrative claim file, including multiple independent medical evaluations, medical reviews and a functional capacity evaluation, that Van Deventer was capable of performing "any job" because he could perform the duties of his own sedentary occupation.  Consequently, the claim determination was supported by substantial evidence and was neither arbitrary nor capricious.

## A.  The Summary Judgment Standard

It is well-settled that where, as here, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law, summary judgment is appropriate.  Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991).  Fed. R. Civ. P. 56(a) provides that a party may move for summary judgment:

> [i]dentifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  Moreover, "the burden on the moving party may be discharged by 'showing'- that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

**B.**     **The Applicable ERISA Standard of Review**

When a determination rendered by a claim administrator under an employee benefit plan governed by ERISA is challenged, the standard of review to be employed by the court is dictated by the plan itself. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed. 2d 80 (1989). Where, as here, an ERISA-regulated plan confers discretion to the claim administrator to interpret the terms of the plan and determine eligibility for and entitlement to benefits, the claim determination is reviewed under the arbitrary and capricious standard of review. Id. at 111. In other words, since the LTD Plan vests discretionary authority in the claim administrator, the District Court was to exercise only a limited review of the claim determination. *See* Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997). Under the highly deferential arbitrary and capricious standard of review, a "district court may overturn a decision of the Plan administrator only if it is without reason, unsupported by the evidence or erroneous as a matter of law." Id.; *see also*, Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40 (3d Cir. 1993).

Here, it is undisputed that the arbitrary and capricious standard of review applies to this matter. In addition, it is also undisputed that there was no structural conflict that needed to be factored into the District Court's review. The Pension Committee was conferred discretionary authority to construe the terms of the LTD

34

Plan and to delegate its authority to render benefit determinations. (A863-865).

Reed, as Claims Service Organization, rendered the determination on the first level

appeal. (A207-210). The second level appeal determination and the determination

on remand, were decided by Mr. McDonald as a delegate of the Pension

Committee. (A685-691).   Neither the delegates nor the Pension Committee was

responsible for the funding of the LTD Plan; rather, the LTD Plan is funded

through its participants. (A866). Accordingly, no structured conflict of interest

should needed to be factored into the adjudication of this matter. Kosiba v. Merck

& Co., 384 F.3d 58, 66-67 (3d Cir. 2004) (holding there is no structural conflict of

interest where an employer funds a plan, but delegates claim administrative

authority to a third party); Zurawel v. Long Term Disability Income Plan for

Choice Employees of Johnson & Johnson, 2010 WL 3862543 (D.N.J. Sept. 27,

2010); and Dunn v. Reed Group, Inc., 2009 U.S. Dist. LEXIS 78857 (D.N.J. Sept.

2, 2009).   In both Zurawel and Dunn, the District Court, in particular, the

Honorable Freda L. Wolfson, U.S.D.J., held that no structural conflict of interest

existed with respect to this very LTD Plan.

**C.     The District Court's Decision Should be Upheld as the Claim Determination was Both Reasonable and Fully Supported by Substantial Evidence**

Abuse of discretion is determined by evaluating not whether the claim

administrator's decision was correct, but rather, by evaluating whether the decision was reasonable and supported by the evidence. Abnathya, 2 F.3d at 40.. "Substantial evidence" means relevant evidence which reasonable minds might accept as adequate to support a claim determination even if it is possible to draw two inconsistent conclusions from the evidence. Port Norris Exp. Co., Inc. v. I.C.C., 697 F.2d 497, 502 (3d Cir. 1982). Thus, under the arbitrary and capricious standard of review, as long as there is substantial evidence in the administrative record that supports the claim administrator's determination, it may not be overturned by the Court, even if the record also contains evidence that contradicts the claim administrator's determination. As the Court in Zurawel observed, "[t]he scope of this review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Zurawel, 2010 WL 3862543, *10 (quoting Moskalski v. Bayer Corp., 2008 WL 2096892, *4 (W.D. Pa. May 16, 2008)). Thus, as long as there exists at least a reasonable ground for disagreement as to the accuracy of the claim determination, the determination will be upheld. See, Moats, 981 F.2d at 687-88 (under the arbitrary and capricious standard, the trustees' interpretation should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan). "[O]nly

36

evidence in the administrative record is admissible for the purpose of determining whether the plan administrator's decision was arbitrary and capricious <u>Kosiba</u>, 384 F.3d at 67; <u>Mitchell</u>, 113 F.3d at 440; and <u>Abnathya</u>, 2 F.3d at 48.

The final claim determination was based upon substantial evidence. All of the doctors who either examined Van Deventer or reviewed his medical records concluded that Van Deventer was capable of performing sedentary work with the exception of his treating physician, Dr. Strouse. Specifically:

- Dr. Barr's concluded, after an IME on July 29, 2009, that Van Deventer "is capable of sedentary duty only." (A417-422);

- Mr. Filippone's conclusion following the functional capacity evaluation of Van Deventer on January 7, 2010 that "[b]ased on Van Deventer's performance, he meets the essential postural and physical demands of any sedentary occupation without restriction for an eight hour work day." (A278-297);

- Dr. Barr's concluded, after an IME on January 27, 2010: "[i]t is my opinion that the examinee [Van Deventer] is capable of sedentary duty work only." (A276);

- Dr. Sukhov's concluded, after performing an independent medical review of the administrative claim file, that Van Deventer was "capable of sedentary duty work, as long as he could change positions every 30-45 minutes with no lifting." (A218-221);

- Dr. Trangle's concluded, after performing an independent medical review of the administrative claim file that: "[i]n

37

short,…this individual has been capable of sedentary duty for some time well before the 3/10/10 date when his benefits were terminated." (A674-683);

- Dr. Barr's letter dated March 9, 2012, stated: "I felt the patient was capable of working sedentary duty, but with the recommendation of being able to change position frequently." (A709);

- Dr. Barr's letter dated March 23, 2012, stated: "[t]he patient does have a sedentary duty job." (A714); and

- Dr. Barr stated during a telephone call on April 6, 2012, that it was his consistent opinion that Van Deventer "is capable of sedentary duty." (A715-716).

The final claim determination was based upon the complete administrative record including all of the medical opinions outlined above. In contrast, the medical documentation submitted by Van Deventer did not constitute substantial evidence that he was unable to perform "any job" as defined by the LTD Plan. Van Deventer's proof that he was disabled consisted of two MRI reports, both of which classified the majority of his conditions as "mild," and a functional capacity evaluation from an occupational therapist, Ms. Smith, with whom he met one time. Accordingly, the final claim determination was not arbitrary or capricious.

Further, Van Deventer's criticism of the Pension Committee for its diligence in communicating with Dr. Barr before rendering the final claim determination is without basis. (Appellant's Brief at p. 45). The Remand Order directed the Pension

Committee to clarify: (1) the seemingly conflicting reports of Dr. Barr dated July 29, 2009 and his letter dated August 4, 2009, and (2) whether Dr. Barr's comments referring to an FCE as an "invalid study" were referring to the July 23, 2012, FCE or the January 10, 2012, FCE. (Id. at A697).  In compliance with the Remand Order, the Pension Committee communicated with Dr. Barr numerous times to assure that it obtained complete clarification of the questions raised by the District Court prior to rendering its final determination.  In compliance with the Remand Order, Dr. Barr confirmed that he has always believed Van Deventer to be capable of sedentary work and that the January 7, 2010, FCE was a valid study. (A709, A714).  Thereafter, and based upon the complete administrative record, including Dr. Barr's clarification, the claim determination was upheld on the following basis:

> The documentation as supplemented on Remand, **contains substantial objective evidence to support Reed's initial determination** that Mr. Van Deventer was capable of work at a sedentary level, and to support the prior J&J determination that Mr. Van Deventer was capable of sedentary work with certain restrictions and limitations, and that Mr. Van Deventer is no longer disabled under the terms of the Plan, specifically the 2nd Tier of benefits under the Plan, as of March 10, 2010 [emphasis added].

(A736). Accordingly, the claim determination was based upon the substantial evidence and not arbitrary or capricious.

Van Deventer assertions that the District Court became a substitute claim

39

administrator by citing to Mr. Filippone and Dr. Trangle's reports alleging that their reports were not relied upon by the Pension Committee, is without basis as the reports were unequivocally relied upon by the Pension Committee in rendering their final claim determination. Both Mr. Filippone and Dr. Trangle concluded that Van Deventer was capable of performing sedentary work without restrictions and both Dr. Barr and the Pension Committee concluded Van Deventer could perform sedentary work with restrictions related to postural changes. (Appellant's Brief at pp. 12, 35-37). The Pension Committee relied upon the complete administrative record, including the opinion of Dr. Barr, Dr. Sukhov, Dr. Trangle and Mr. Filippone, in rendering its final claim decision. The Pension Committee applied the most conservative of the opinions, that Van Deventer was capable of sedentary work with certain restrictions and limitations related to postural changes as suggested by Dr. Barr. (A736). Pursuant to the terms of the LTD Plan, to receive benefits during the "any job" period, Van Deventer was required to demonstrate, due to sickness or injury that he was unable to perform any job for which he is or may reasonably become **with or without reasonable accommodation** qualified by training, education or experience [emphasis added]. (A847). Van Deventer's analysis fails to recognize that Mr. Fillipone, Dr. Barr, Dr. Sukhov, Dr. Trangle and the Pension Committee all determined that Van Deventer was capable of

40

performing sedentary duties. (A270-271; A273-277; A719-737).

The Pension Committee unequivocally relied upon the complete administrative record, in rendering the Remand Determination including both Dr. Trangle's and Mr. Filippone's opinions that Van Deventer could perform sedentary work. In particular, the Pension Committee stated "we have evaluated <u>all</u> of the documentation related to Mr. Van Deventer's claim [emphasis added]:" (A733).

> Accordingly, we reasonably conclude that Dr. Trangle did provide a fresh look assessment of the medical facts and objective information related to Mr. Van Deventer's condition with respect to benefits under the Plan, and that he was not influenced by the opinions or conclusions of Dr. Barr. Rather, he focused upon those medical facts contained in the Record.

(A735-736). The Remand Determination also stated, with respect to Mr. Filippone's January 2010 FCE:

> After inquiry with Dr. Barr, he made clear his reference to an invalid study referred to the prior FCE from July 24, 2009. This statement was based upon "self-limited" behavior that was noted in that prior July 2009 FCE.

> Dr. Barr made clear that the reference to an invalid study referred to the July 24, 2009 FCE report. We reasonably conclude that **the second FCE**, which was determined to be valid, and which was relied upon for Dr. Barr's January 27, 2010 report, **was indeed valid**. [emphasis added].

(A735).

41

Further, Van Deventer incorrectly asserts that Dr. Sukhov's opinion was based upon "an incorrect diagnosis," alleging that she failed to specifically mention select diagnoses in her report, and by stating that "he [Van Deventer] should be able to tolerate the pain as many people are able to cope with pain from disc bulges and protrusions." (Appellant's Brief, at pp. 15, 38-40). Dr. Sukhov's review was based upon the complete administrative claim file as it existed at the time of her review and she commented on the conditions that she deemed relevant and necessary to rendering her opinion. (A220-221); *see* Stratton v. EI DuPont de Nemours & Co., 363 F.3d 250, 258 (3d Cir. 2004)("A professional disagreement does not amount to an arbitrary refusal to credit.")). Moreover, and contrary to Van Deventer's assertion, Dr. Sukhov never stated that "he [Van Deventer] should be able to tolerate the pain" (Appellant's Brief, at pp. 15, 39), but rather stated:

> Medical records do not indicate the claimant's inability to ambulate functional distances or even and uneven surfaces, drive and negotiate stairs. His upper extremity activities are not restricted. The claimant can have a range of motion above the shoulder level for work-related activities. Medical records available for my review demonstrate positive MRI findings of the lumbar spine which revealed productive changes which have been suggested as the source of the claimant's pain; however, this may not necessarily be significant in this case due to the fact that **many people without back pain have disc bulges or protrusions but not extrusions. In addition it should be pointed out that not all degenerative disc pathologies are painful. About 20%**

42

> **of asymptomatic controls under the age of 60 have
> been found to have herniated discs**. [emphasis added].

(A220-221).

Likewise, Van Deventer's assertions that the District Court functioned as a "substitute plan administrator," selectively choosing documents to "support the decision of the Plan Administrator" and failing to address Van Deventer's "cherry picking" arguments are both contrary to the facts and the District Court's opinion. (Appellant's Brief at p. 34, A18-19). The District Court did not selectively choose documents; rather it considered the administrative record "as a whole." (A18). Moreover, the District Court specifically addressed Van Deventer's "cherry picking" argument stating: "Looking at the **record as a whole**, the Court **disagrees with Plaintiff's "cherry picking" argument,** and finds that the Pension Committee relied on the opinions of at least four doctors" [emphasis added]. (A18).

Grasping at straws, Van Deventer also asserts that the District Court erred because it references Dr. Quinones' reports as being relied upon by the Pension Committee, when, according to Van Deventer, "[t]his information was, however, not considered by the Plan Administrator." (Appellant's Brief at p. 11, 34; A18). Contrary to Van Deventer's assertions, the reports from Dr. Quinones dated January 9, 2009, January 26, 2009, and February 9, 2009, were all part of the

administrative record relied upon by the Pension Committee in rendering the final claim determination. (A528-532). Moreover, even if the Court were to find that Dr. Quinones' reports should not have been referenced by the District Court, it equates to harmless error because the District Court cited to multiple additional medical opinions that were explicitly referenced in the final determination letter, all of which supported the conclusion that Van Deventer was not disabled under the "any job" standard of disability at the time his benefits were denied. (A18-19).

In short, the substantial evidence overwhelmingly demonstrates that Van Deventer was capable of performing sedentary duties under the "any job" definition of disability at the time his benefits were denied. The Remand Determination, upholding the final determination was fully supported by substantial evidence and was not arbitrary or capricious. Consequently, the District Court correctly concluded that the claim determination was fully supported by the medical evidence contained in the administrative record and was neither arbitrary nor capricious.

## POINT II

### VAN DEVENTER FAILED TO MEET HIS BURDEN OF DEMONSTRATING THAT HE WAS DISABLED FROM "ANY JOB" UNDER THE LTD PLAN

Most significantly, Van Deventer bears the burden of establishing that the

44

Pension Committee abused its discretionary authority by denying his claim for

disability benefits and also bears the burden of demonstrating that he is entitled to

those benefits.    Mitchell, 113 F.3d at 439-40; Local 56, United Food and

Commercial Workers Union v. Campbell Soup Co., 898 F.Supp. 1118 (D.N.J.

1995).  It is Van Deventer who must demonstrate that he is disabled from any job

for which he is, or may reasonably become, qualified by training, education or

experience and that the claim determination was arbitrary and capricious.

Mitchell, 113 F.3d at 439-440 ("a claimant bears the burden of demonstrating that

she qualifies for benefits"). As the Eighth Circuit, reasoned, relying upon

Abnathya held:

> [w]hen the plan places the burden on the claimant to
> provide necessary information; the claimant cannot shift
> the burden of investigation to the plan administrator.
> *See*, Abnathya v. Hoffman LaRoche, Inc., 2 F.3d 40, 46
> (3d Cir. 1993).  In such cases, a rule compelling plan
> administrators to independently investigate and verify the
> information that claimants submit would add substantial
> and unnecessary costs to the administration of ERISA
> plans.

Sahulka v. Lucent Technologies, Inc., 206 F.3d 763, 769 (8th Cir. 2000); *see*

Zurawel, supra, 2010 WL 3862543 at *10 ("Ultimately, Plaintiff bears the burden

of proof and must present required medical information to the Plan in order for the

Plan (through the Claims Administrator) to find that he is disabled" (internal

citation omitted)). Moreover, in <u>Pinto</u>, the Third Circuit held that a claim administrator does not have a duty to gather additional information other than that which is submitted with the claim. <u>Pinto v. Reliance Standard Life Insurance Company</u>, 214 F.3d 377, 394 (3d Cir. 2000).

Applying the foregoing principles of law to the facts of this matter, it was incumbent upon Van Deventer to establish his inability to perform the duties of any job for which he is, or may reasonably become - with or without reasonable accommodation - qualified by training, education or experience. As detailed above, Van Deventer did not meet his burden, and his failure is fatal to his action. Indeed, there was an utter lack of documentation submitted by Van Deventer in support of his claim for continued benefits. The only diagnostic testing that he submitted in support of his claim and during both appeals were two MRI reports and a FCE report of Ms. Smith, an occupational therapist. Rather than attempt to meet his burden, Van Deventer misrepresents and cherry picks statements from the administrative record which best support his position that he is disabled, ignoring all documentation to the contrary. As concluded by the multiple independent physicians who reviewed the medical records, the results of the testing did not demonstrate that Van Deventer was prevented from performing the duties of a sedentary occupation. Although Dr. Strouse reversed his position that Van

Deventer was capable of returning to a sedentary occupation, he submitted no medical or clinical examination results in support of his revised opinion. By contrast, Dr. Sukhov, Dr. Trangle and Dr. Barr, all consistently concluded that he was capable of sedentary work. (A685-691).

It was not arbitrary and capricious for the LTD Plan to rely on the opinions of its medical consultants and independent physician consultants who examined Van Deventer and/or reviewed his medical records over the opinions of Van Deventer's treating physician in determining that Van Deventer was not disabled. Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003) (a claim administrator may rely upon its plan consultants over the opinion of a plaintiff's treating physicians in rendering a claim determination). This especially holds true here, where there is a dearth of information submitted by Van Deventer in support of his appeals.

Moreover, Van Deventer's assertions that the Pension Committee had an obligation to rely upon the opinion of Ms. Smith, an occupational therapist, Dr. Strouse or his own self serving statements that he was "unable to perform sedentary work" over the opinions of the medical doctors and Mr. Filippone who either examined Van Deventer or reviewed his file is contrary to existing law. (Appellant's Brief at p. 19, 38, 45, 48). Van Deventer incorrectly asserted that the

47

District Court should have accepted the opinion of Ms. Smith, a therapist, over the medical opinions of three independent physicians and a physical therapist who performed two functional capability evaluations. However, Ms. Smith's opinion was largely based upon Van Deventer unsuccessful prior attempt to return to work in 2009. (A236-249). Specifically, Ms. Smith concluded:

> Mr. Van Deventer cannot perform sustained or constant sitting during the day, even with short breaks to relieve foot, leg or back or neck pain, with progressively shorter sitting tolerances during the day, in conjunction with distracting pain that further limits his ability to focus and pay attention to detail.

(A246). Moreover, Van Deventer's conclusory assertions that the Pension Committee and medical evaluators dismissed the FCE of Ms. Smith are untrue and contrary to the administrative record (Appellant's Brief at pp. 19, 48). Contrary to Van Deventer's assertions, the FCE report of Ms. Smith was considered in rendering the final claim determination and rejected in favor of the opinions of the independent physicians who either examined Van Deventer and/or reviewed his medical records and concluded that Van Deventer's restrictions and limitations did not prevent him from performing sedentary duties full time. (A685-691; *see* Stratton, 63 F.3d at 258)("A professional disagreement does not amount to an arbitrary refusal to credit."). In fact, Dr. Trangle specifically addressed Ms. Smith's findings and stated that he was unable to determine "how" Ms. Smith

arrived at these conclusions given that there were no consistency measurements in her report. (A681-682).

In Corson v. Astrue, 601 F. Supp. 2d 515, 531 (W.D.N.Y. March 4, 2009), the Court held that a claimant's physical therapist and chiropractor were not acceptable medical sources who could provide medical opinions that required the recognition and weight by the Commissioner of Social Security. Specifically, the Court stated:

> Because the regulations do not classify chiropractors or physical therapists as either physicians or "other acceptable medical sources," neither Dr. Horvath nor Dr. Higgins can provide medical opinions that require recognition and weight by the Commissioner equal to a medical doctor. As such, the ALJ was correct in not according their opinions the same weight as the medical doctors.

Id. at 531-32. Similarly, in Barnable v. First Fortis Life Ins. Co., 44 F.Supp.2d 196, 204 (E.D.N.Y. March 26, 1999), the Court, in granting the insurer's motion for summary judgment, held that a chiropractor's opinion should not be afforded the "same weight and respect as a medical opinion" where the insured's disability was diagnosed by a chiropractor and the chiropractor's opinion was contrary to the physician's opinion after conducting an independent medical examination.

In support of his appeal, Van Deventer relies upon medical records without providing this Court with any of the dates of treatment and clouds the fact that there were no medical records evidencing disability at the time his benefits were

terminated. (Appellant's Brief at pp. 14, 37-38). In particular, Van Deventer states "[d]uring the period from September 11, 2008 to December 3, 2009 the file contains 30 entries of receipt of medical information from Dr. Strouse (A81-681)," however, he does not cite to exactly where in the Appendix, the medical evidence submitted by Dr. Strouse can be found. (Appellant's Brief at pp. 14, 38). Further, Van Deventer does not provide specifics as to the medical documentation that he asserts Dr. Strouse submitted in support of his disability at the time his benefits were denied. The District Court specifically addressed Van Deventer's argument related to the medical evidence submitted by Dr. Strouse and concluded that Dr. Strouse's opinion was <u>not</u> supported by any medical evidence other than two MRI reports which classified Van Deventer's conditions as "mild." (<u>Id.</u>; A19). Van Deventer also incorrectly asserts that the Pension Committee, through its delegate, "instructed Dr. Strouse to complete a return to work form stating that Appellant was able to work four hours a day in a sedentary position" as asserted by Van Deventer. (Appellant's Brief at p. 41). In fact, Dr. Strouse released Van Deventer to return to work on his own. (A513-515).

Van Deventer did not supplement the record with any medical tests or other documentary evidence performed by Dr. Strouse, other than his treatment notes and excuse slips to support Dr. Strouse's opinion that Van Deventer was unable to

perform sedentary duties.   Contrary to Van Deventer's assertions, it was Van Deventer's burden, which he failed to meet, to submit medical documentation or diagnostic test results from Dr. Strouse to support his assertion that his condition worsened upon his return to work or that his condition improved after he "walked out of work" again [emphasis added]. (A454) In fact, Dr. Strouse is the only physician who opined that Van Deventer's restrictions and limitations prevented him from performing sedentary duties.   Therefore, the Pension Committee was fully justified in giving more weight to the opinions of its independent physicians than to Dr. Strouse's bald assertions.

The Pension Committee respectfully submits that it was neither arbitrary nor capricious to attribute more weight to the opinions of the three independent medical physicians who determined that Van Deventer was capable of sedentary duties over the opinion of Ms. Smith, a therapist, who based upon one meeting with him determined that his restrictions and limitations prevented him from performing any sedentary duties and Dr. Strouse's conclusory and unsupported opinion. Accordingly, the District Court correctly concluded that Van Deventer failed to meet his burden of proof at the time his benefits were denied. (A18-19).

## POINT III

## THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN REMANDING THE CASE TO PENSION THE PENSION COMMITTEE

Van Deventer's assertion that the <u>Miller</u> decision required the District Court to reinstate his benefits rather that to remand the matter misconstrues both <u>Miller</u> and the District Court's decision. *See* <u>Miller,</u> 632 F.3d at 856-857. The purpose of the remand was to clarify the record to enable the District Court to determine whether the administrator's decision was arbitrary or capricious. Retroactive reinstatement was inapplicable here because the District Court did not determine that the claim administrator's decision was "unlawful" or "unreasonable" and the claim administrator's decision was an initial claim determination and not a decision as to whether Van Deventer was eligible for continuing benefits. <u>Miller,</u> 632 F.3d at 856-857. Accordingly, the District Court correctly remanded the matter to obtain clarification of the record which constituted the basis of the claim determination when the Pension Committee was considering whether Van Deventer was disabled from "any job" for the first time.

Where, as here, the District Court was unable to render a conclusion as to whether the administrator's decision was arbitrary and capricious, remand, rather

than reinstatement, is the appropriate remedy. (A11); *see also* Creer v. AT&T Umbrella Benefit Plan No. 1, 2012 WL 397717 at *6 (E.D. Cal. Feb. 7, 2012)(denying as premature cross motions for summary judgment addressing the termination of LTD benefits, and remanding to the plan administrator). In Miller the Third Circuit relied upon and followed the Ninth Circuit's opinion in Pannebecker v. Liberty Assur. Co. of Boston, 542 F.3d 1213, 1221 (9th Cir. 2008), holding that reinstatement was appropriate if the termination of benefits was arbitrary and capricious because "the claimant would have continued receiving benefits absent the administrator's arbitrary and capricious conduct." Id. *See also* Hacker v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 776 (7th Cir. 2003) (reinstatement was appropriate because it was "clear that the termination procedures were arbitrary and capricious"). However, because the District Court did not find the plan administrator's decision was arbitrary or capricious, but instead concluded that clarification or supplementation of the record was required, remand was appropriate pursuant to Third Circuit precedent. Miller, 632 F.3d at 856-857.

Van Deventer further incorrectly asserts that "the only remedy was reinstatement of benefits to the status quo." Miller, 632 F.3d at 856-857. In Miller, the Court addressed the *status quo* in the context of its consideration of a finding

that there was an "unlawful denial or termination." (Appellant's Brief, at p. 6; Miller, 632 F. 3d at 856). The Third Circuit recognized and distinguished between the denial of benefits from inception as opposed to termination of continuing benefits, holding that remand was appropriate where benefits were denied from their inception. As recognized in the case law cited by Appellant, consideration of the *status quo* must distinguish between periods of disability for which different standards apply under the plan. *See* Haisley v. Sedgwick Claims Mgmt. Services, 776 F.Supp.2d 333, 59 (W.D. Pa. 2011). In Haisley, the Court found that the termination of plaintiff's disability benefits was arbitrary and capricious but also recognized that the plan's definition of total disability became "more restrictive" after twenty-four months. Accordingly, the *status quo* established by the initial grant of benefits had changed and plaintiff was not entitled to the reinstatement of benefits. Id. Instead, the Court held that "the case must be remanded to [the plan administrator] for a determination concerning [plaintiff's] potential entitlement to LTD benefits under the terms of the Plan for the period of time postdating [the end of the twenty–four month period]." Id.

The final claim determination that was evaluated by the District Court was an initial determination as to whether Van Deventer was eligible for benefits under the "any job" definition of disability as defined by the LTD Plan. Here, it is

undisputed that the initial 12 month period of Van Deventer's disability benefits ended on March 9, 2010. Pursuant to the terms of the LTD Plan, for Van Deventer to receive benefits beyond that date, he was required to demonstrate his eligibility under the stricter "any job" standard of review. There was never an administrative decision that Van Deventer was entitled to benefits under the "any job" standard applicable after March 9, 2010; the inception of the "any job" period. Consequently, the denial of benefits was an initial determination and remand was the correct recourse pursuant to the Third Circuit opinion in <u>Miller</u>. *See* <u>Miller</u>, 632 F. 3d at 856-857. Therefore, even if the District Court had held that the Pension Committee's decision was arbitrary and capricious, which it did not, the appropriate remedy under <u>Miller</u> was a remand "to have the administrator reevaluate the case using reasonable discretion." <u>Miller</u>, 632 F.3d at 857.

The District Court's February 1, 2012, decision remanding the matter to the Pension Committee identified only the potential that "[t]he failure to verify Dr. Barr's opinion *may* constitute procedural irregularities" and directed the Pension Committee to ascertain and clarify the opinions of Dr. Barr "in light of all the other facts." (A11). The identification of a procedural irregularity does not heighten the standard of review pursuant to the United States Supreme Court decision in <u>Metropolitan Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 111-113 (2008). Rather alleged

"procedural irregularities" are treated as factors to be considered in the "the combination-of-factors method of review." Id. at 116-118.   The District Court determined that the Pension Committee should have contacted Dr. Barr for clarification prior to rendering its final determination; however, the  District Court did not hold that Van Deventer had prevailed in establishing that the benefits decision was actually arbitrary and capricious. (A11).  To the contrary, the District Court denied Van Deventer's motion for summary judgment on those grounds. (A2-A12).  Moreover, following the remand and upon the submission of cross-motions for summary judgment, the District Court stated: that it **"found no evidence of an breach of fiduciary duty owned to Van Deventer."** [emphasis added] (A19). Further, the procedural irregularity identified by the District Court related to Dr. Barr's seemingly conflicting opinions was clarified on remand and determined by the District Court to no longer be a factor in rendering its decision in favor of the Pension Committee that the Pension Committee did not act in an arbitrary and capricious manner. (A18).

Van Deventer further asserts that there are additional procedural irregularities which were not identified by the District Court that warranted reinstatement, including his allegation that Dr. Barr's advice related to postural changes had been tried.  He further incorrectly asserts that the District Court *found*

that Mr. McDonald asserted that Dr. Barr "disagreed with the results of the January 2010 FCE" but relied upon it anyway. (Appellant's Brief at p. 29-30). As addressed in Point II, Van Deventer's return to work in March 2009 occurred <u>prior to</u> Dr. Barr's January 27, 2010 independent medical examination and consequently, Van Deventer's assertions related to Dr. Barr's advice are both factually and chronologically impossible because Van Deventer never returned to work after January 27, 2010. (A273-277).    Likewise, and contrary to Van Deventer's insinuations, the District Court never *found* that Mr. McDonald's statement that "Dr. Barr disagreed with the results of the January 2010 FCE" was a procedural irregularity. (Appellant's Brief at p, 29; A9).

The District Court directed the Pension Committee to clarify with Dr. Barr which FCE report he was referring to as an invalid study.   (A7). Dr. Barr confirmed during the remand evaluation that he has <u>always</u> believed that Van Deventer was capable of sedentary work and that the January 7, 2010, FCE was a valid study. (A709, A714). Specifically, Dr. Barr stated on remand:

> The **second Functional Capacity Evaluation was a**
> **valid test** and therefore more valid than the previous
> Functional Capacity Evaluation.  It was a more accurate
> representation of the patient's actual abilities [emphasis
> added].

(A714). Dr. Barr, again, during the telephone conference on April 6, 2010, stated:

"[y]es he did better in terms of performance with the second functional capacity examination [January 7, 2010] and **it was valid** [emphasis added]." (A715).

Contrary to Van Deventer's assertions, the District Court never "determined that during the six day period from July 29, 2009 to August 4, 2009 Dr. Barr had *found* that Appellant was capable and incapable of sedentary work." [emphasis added]. (Appellant's Brief at p. 43). Rather, the District Court stated with respect to Dr. Barr's two seemingly inconsistent opinions dated July 29, 2009, and August 4, 2009: "[t]he contradiction between Dr. Barr's statement that Plaintiff was disabled and his insistence that this opinion was consistent with his earlier medical examination (finding that Plaintiff was capable of sedentary work) has been an ongoing source of dispute between the parties." (A5). Further, Van Deventer's assertion that "a neutral arbiter would have wanted to know the information before it had acted to terminate payment," is irrelevant because the District Court did not find that the Pension Committee acted as an impartial arbiter. (Appellant's Brief at p. 44, A11). Where as here, there has been no finding that the Pension Committee's determination was arbitrary or capricious, remand, rather than reinstatement is the proper course pursuant to Third Circuit authority. Miller, 632 F.3d at 856.

In summary, <u>Miller</u> does not require the reinstatement of benefits where the District Court did not concluded that the administrator's decision was arbitrary or capricious. <u>Id</u>. In addition, and contrary to Van Deventer's assertions, the District Court specifically cited and relied on <u>Miller</u>; the decision that Van Deventer now argues was "overlooked," in both the Remand Order and the Order granting summary judgment to the Pension Committee. (Appellant's Brief, p. 4, 27; A11, A17). Van Deventer cites no evidence that the District Court overlooked in denying his motion for reconsideration in favor of remand, only that the District Court denied Van Deventer's motion "without explanation or opinion." (Appellant's Brief at p. 27). Van Deventer's motion for reconsideration focused on his unsupported allegation that the Pension Committee did not want to pay this claim and "overlooked or minimized information that did not support its position." However, the position was considered and <u>rejected</u> by the District Court in its initial denial of Van Deventer's motion for summary judgment. (A2-A12). Van Deventer's insistence on his view of the evidence does not form a basis for reconsideration. <i>See</i> <u>United States v. Compaction Sys. Corp.</u>, 88 F.Supp.2d 339, 345 (D.N.J. 1999); <u>Florham Park Chevron, Inc., v. Chevron U.S.A.</u>, Inc., 680 F. Supp. 159, 163 (D.N.J. 1988). Moreover, as noted above, because Van Deventer never received benefits under the "any job" standard of disability, it is like an

initial denial of benefits and the relevant status quo in this case. Therefore, even if the District Court had determined that the Pension Committee's decision was arbitrary and capricious, which it did not, the appropriate remedy under <u>Miller</u>, would still have been remand. <u>Miller</u>, 632 F.3d at 857.

## CONCLUSION

For all of the forgoing reasons, the Pension Committee respectfully submits that the District Court properly granted summary judgment in favor of the Committee and against Van Deventer, and should be upheld in all respects.

McElroy, Deutsch, Mulvaney & Carpenter, LLP
Attorneys for Defendant/Appellee,
Pension Committee of Johnson & Johnson

By:   _____
           Francis X. Dee
      A Member of the Firm

Dated: June 28, 2013

60

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that I, Francis X. Dee, and my co-counsel, Randi F. Knepper and Janet Nagotko, are members of the bar of the United States Court of Appeals for the Third Circuit. I certify under penalty of perjury that the foregoing is true and correct.

Francis X. Dee
A Member of the Firm

Dated: June 28, 2013

## CERTIFICATION OF WORD COUNT

Based upon the word count of the word processing system used to prepare the within brief, I hereby certify that the brief contains exactly 13,058 words commencing with the Statement of Subject Matter & Appellate Jurisdiction on page 1 through and including the Conclusion on page 60. I certify under penalty of perjury that the foregoing is true and correct.

Francis X. Dee
A Member of the Firm

Dated: June 28, 2013

61

## CERTIFICATION OF FILING AND SERVICE

I hereby certify that, on this date:

(1)   the PDF copy of the within Brief was filed by attachment to an e-mail sent to electronic_briefs@ca3.uscourts.gov;

(2)   the original and six copies of the within Brief were filed with the Clerk of the United States Court of Appeals for the Third Circuit:
Marcia C. Waldron, Clerk
United States Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania  19106-1790

(3)   two copies of the within Brief were served by Federal Express on appellant's counsel
Stephen R. Bosin, Esq.
70 Grand Avenue, Suite 200
River Edge, New Jersey 07661

I certify under penalty of perjury that the foregoing is true and correct.

_____
Francis X. Dee
A Member of the Firm

Dated:  June 28, 2013

## CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS

I hereby certify that the within Brief in PDF format is identical to the hard copies of the within Brief. I certify under penalty of perjury that the foregoing is true and correct.

_____
Francis X. Dee
A Member of the Firm

Dated:  June 28, 2013

## CERTIFICATION OF VIRUS CHECK

I hereby certify that a virus check was performed by a McAfee anti-virus software program.  I certify under penalty of perjury that the foregoing is true and correct.

_____
Francis X. Dee
A Member of the Firm

Dated:  June 28, 2013